IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| COMMISSIONS IMPORT EXPORT S.A., <br><br> Plaintiff, <br><br> v. <br><br> REPUBLIC OF THE CONGO, <br><br> Defendant. | **MEMORANDUM OPINION AND ORDER** <br><br><br> Case No. 2:16-CV-00404-BSJ <br><br> District Judge Bruce S. Jenkins |

On June 8, 2016, Commissions Import Export S.A. ("Commissions") filed a Motion to Compel Compliance with a Subpoena Duces Tecum it had served on Bank of Utah.[1] Bank of Utah filed a Memorandum in Opposition to the Motion to Compel Compliance with Subpoena Duces Tecum on June 15, 2016.[2] The motion was heard before the Court on June 17, 2016 at 2:00 PM and again on July 12, 2015 at 1:30 PM. Kamie F. Brown, Michael R. Johnson, and Ellen Toscano appeared on behalf of Commissions. Robert G. Barnes and Aaron D. Lebenta appeared on behalf of Bank of Utah.

For the reasons set forth below, after reviewing the arguments of counsel, the parties' memoranda, and the relevant legal authorities, Commissions' Motion to Compel Compliance with Subpoena Duces Tecum is GRANTED. The remaining question as to who should bear the cost of *in camera* production is for another day.

## BACKGROUND

---

[1] Motion to Compel Compliance with Subpoena Duces Tecum, CM/ECF No. 8 (June 8, 2016).
[2] Opposition of Non-Party Bank of Utah to Plaintiff's Motion to Compel Compliance with Subpoena Duces Tecum, CM/ECF No. 24 (June 16, 2016).

1

This case arises out of a thirty year effort to collect monies owed by the Republic of the Congo.[3] Throughout the 1980s, contracts for public works and materials were entered into and guaranteed by the Republic of the Congo.[4] When the Republic of the Congo failed to pay the promised amounts, Commissions filed a request for arbitration with the International Court of Arbitration of the International Chamber of Commerce in 1998.[5] The tribunal issued a final award in favor of the Commissions which included "principal owed under the agreement, interest, penalty interest on various promissory notes, and costs."[6]

On July 10, 2009, Commissions obtained an order from the Queen's Bench Division of the High Court of Justice, Commercial Court in London which found that the award "was enforceable in the same manner as a judgment under section 101 of the 1996 Arbitration Act of England, and recalculate[ed] the amount due to include additional interest and other costs."[7] Shortly thereafter, Commissions filed a complaint in federal court in the Southern District of New York to enforce the English Judgment, which was then transferred to the District of Columbia. On October 9, 2013, the U.S. District Court for the District of Columbia granted Commissions' Motion for Default Judgement and Confirmation of Arbitration Award and an award amount of € 567,184,160.72 and U.S. $855,000.00, or approximately U.S. $630,202,544.73.[8] On May 13, 2016, Commissions filed with this Court a registration of a foreign judgment, *Commissions Import Export S.A. v. Republic of the Congo*, No. 1:13-cv-713-RLW, from U.S. District Court for the District of Columbia.[9]

---

[3] *See* Commissions Import Export S.A. v. Republic of the Congo, 757 F.3d 321, 324 (D.C. Cir. 2014).
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.* at 325.
[8] Motion to Compel Compliance, CM/ECF No. 8, para. 12.
[9] Registration of Foreign Judgment from U.S. District Court, District of Columbia, CM/ECF No. 2 (May 13, 2016).

2

On May 13, 2016, Commissions caused a subpoena to be served on Bank of Utah to produce documents related to Bank of Utah's role as owner trustee and security trustee for a Boeing 787-8 Dreamliner aircraft, serial number 37306, Federal Aviation Administration registration number N887BA, including two engines, Rolls Royce Trent 1000, serial numbers 10312 and 10293 (collectively the "aircraft").[10] On June 17, 2016, the Republic of the Congo was served with notice of the subpoena served to Bank of Utah.[11]

On June 8, 2016, Commissions filed a motion to compel compliance with subpoena duces tecum.[12] On June 16, 2016, Bank of Utah filed a response and memorandum in opposition to the motion to compel compliance.[13] This motion was heard on June 17, 2016 at 2:00 PM and again on July 12, 2016 at 1:30 PM.

On June 17, 2016, the Court noted that Bank of Utah had attached to its opposition memorandum to compel certain documents which had been requested by Commissions and that other classes of requested documents are publically available. The Court suggested that Commissions eliminate such documents from its request to Bank of Utah and that Commissions file an amended description of documents requested for delivery to the Court for examination *in camera*.[14] The modification was filed and Bank of Utah sought a continuation of the date for delivery to the Court.[15] An extended delivery date was granted.[16] To the Court's surprise, Bank of Utah delivered 12 bankers boxes of double sided printed documents to the Court, estimated to contain some 55,000 page—a most daunting task for *in camera* review.

---

[10] Return of Service Executed for Authorized served on Bank of Utah, CM/ECF No. 3 (May 25, 2016).
[11] Return of Service, CM/ECF No. 28 (June 17, 2016).
[12] Motion to Compel Compliance, CM/ECF No. 8.
[13] Opposition to Motion to Compel Compliance, CM/ECF No. 24.
[14] Order granting Motion for Extension of Time to Produce Documents to the Court in Camera, CM/ECF No. 36 (June 29, 2016).
[15] *Id.*
[16] *Id.*

On July 12, 2016, Bank of Utah renewed its opposition to Commissions' motion to compel while Commissions again asked that its motion be granted. On July 18, 2016 Bank of Utah filed a motion for leave to file supplemental brief.[17] This supplemental brief discusses the contractual waiver of immunity by the Republic of the Congo in its guaranty of the loan RPK Africa Investment made to Equatorial Congo Airlines and any resulting import to the aircraft's immunity from attachment or execution. At this stage, the question of immunity from attachment or execution is premature and irrelevant.

## **LEGAL STANDARD**

The standard for granting a judgment creditor's motion to compel compliance with a subpoena duces tecum arises under Rule 69 and Rule 45 of the Federal Rules of Civil Procedure. Rule 69 provides that "in aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located."[18] A part of this standard is the notion that "the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgement debtor."[19] Furthermore, district courts are given "broad latitude to determine the scope of discovery and to manage the discovery process."[20] Particularly relevant to this case is Rule 45 of the Federal Rules of Civil Procedure which authorizes the use of a subpoena to obtain information from non-parties in relation to a judgment debtor's financial affairs.[21]

## **DISCUSSION**

---

[17] Motion for Leave to File Supplemental Brief, CM/ECF No. 47 (July 18, 2016).
[18] Fed. R. Civ. P. 69(a)(2).
[19] Zoobuh, Inc. v. Rainbow Int'l Corp., No. 2:14-CV-00477-DN, 2015 WL 2093292, at 1 (D. Utah May 5, 2015).
[20] EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir.2012) *aff'd sub nom.* Republic of Argentina v. NML Capital, Ltd ., 134 S.Ct. 2250 (2014).
[21] Zoobuh, Inc. v. Rainbow Int'l Corp., No. 2:14-CV-00477-DN, 2015 WL 2093292, at 1 (D. Utah May 5, 2015).

## I. It is permissible for Commissions to seek discovery from Bank of Utah.

As Rule 69 and Rule 45 of the Federal Rules of Civil Procedure permit, Commissions, the judgment creditor, is engaging in "inquiry to discover hidden or concealed assets"[22] of the Republic of the Congo, the judgment debtor. Commissions is interested in the aircraft because it believes that the Republic of the Congo has an ownership interest in that property.[23]

Bank of Utah argues that the specific details concerning the scope and nature of the subpoena should be tailored because the discovery sought is burdensome, overbroad, and touches upon privileged information.[24] These concerns may be used to narrow the nature, scope, and manner of the subpoena to avoid the alleged harm. However, the existence of these issues does not abrogate Bank of Utah's obligation to respond.

## II. Foreign Sovereign Immunities Act does not discuss discovery in aid of execution.

Bank of Utah claims that discovery in aid of execution on the aircraft is barred by the Foreign Sovereign Immunities Act ("FSIA") and that district courts are obligated to sua sponte analyze whether FSIA immunity applies.[25] Bank of Utah analyzes several cases which establish that courts are obligated to evaluate FSIA immunity when a judgment creditor is seeking to attach a specific piece of property owned by a foreign sovereign.[26] However, this does not directly address the current matter before this Court which concerns discovery in aid of execution, not execution itself. Of course, Bank of Utah is not a foreign sovereign.

The situation before this Court is distinguishable from the case law presented by Bank of Utah because Commissions by its motion to compel is not yet seeking to attach or execute upon its judgment. Rather, Commissions is seeking information from Bank of Utah concerning the

---

[22] *Id.*
[23] *See* Motion to Compel Compliance, CM/ECF No. 8, paras 14–16.
[24] Opposition to Motion to Compel Compliance, CM/ECF No. 24, p. 25.
[25] *Id.* at p. 16.
[26] *Id.* at p. 16–23.

5

aircraft so that it might be able to evaluate whether this is a viable asset to pursue in execution of its judgment and whether an exception to FSIA immunity applies. Because Commissions is seeking information and not attachment or execution, a FSIA immunity analysis at this stage is not relevant.

The Supreme Court has addressed the issue of discovery in aid of execution in cases concerning a foreign sovereign judgment debtor. In *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014), NML Capital ("NML") served subpoenas on nonparty banks seeking information concerning Argentina's global financial transactions in order to satisfy a judgment. The Supreme Court explained that FSIA "confers on foreign states two kinds of immunity."[27] "Jurisdictional immunity" under 28 U.S.C. § 1604 limits suits that can be litigated against a foreign sovereign.[28] This immunity had been waived by Argentina which allowed NML ultimately to obtain a judgment.[29] "Execution immunity" under 28 U.S.C. § 1609 shields "property in the United States of a foreign state… from attachment[,] arrest[,] and execution."[30]

Concerning the matter directly before the Supreme Court, Justice Scalia noted that "[t]he Act has no third provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets,"[31] and does not say "a word about postjudgment discovery in aid of execution."[32] Therefore, the Supreme Court found that NML's subpoenas served to the banks did not violate FSIA immunity.[33]

---

[27] Republic of Argentina v. NML Capital, Ltd., 134 S. Ct. 2250, 2256 (2014).
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] "Argentina maintains that, if a judgment creditor could not ultimately execute a judgment against certain property, then it has no business pursuing discovery of information pertaining to that property. But the reason for these subpoenas is that NML *does not yet know* what property Argentina has and where it is, let alone whether it is executable under the relevant jurisdiction's law. If, bizarrely, NML's subpoenas had sought only 'information that could not lead to executable assets in the United States or abroad,' then Argentina likely would be correct to say that

The Supreme Court's analysis in *Republic of Argentina v. NML Capital, Ltd.* accurately reflects the situation currently before this Court. The subpoena in this case was served on a nonparty bank, Bank of Utah, seeking information about a foreign sovereign, the Republic of the Congo, in aid of satisfying its judgement. This is not an attachment or execution proceeding, but similar to *NML Capital*, this is a discovery proceeding. This is an area (discovery in aid of execution) that the Supreme Court has said FSIA does not cover.[34] Other district courts applying this standard have also found that "[f]oreign sovereigns enjoy no such 'discovery-in-aid-of-execution' immunity under the FSIA."[35]

As the current motion before this Court concerns discovery in aid of execution and not execution or attachment itself, the FSIA does not apply. Thus, the arguments Bank of Utah asserts regarding FSIA immunity and exceptions thereto are not currently before the Court. Instead, as the motion at issue concerns discovery, not attachment or execution, the legal foundation upon which the Court takes its direction from is Rule 69 and Rule 45 of the Federal

---

the subpoenas were unenforceable—*not* because information about nonexecutable assets enjoys a penumbral 'discovery immunity' under the Act, but because information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place, Fed. Rule Civ. Proc. 26(b)(1); N.Y. Civ. Prac. Law Ann. § 5223. But of course that *is* not what the subpoenas seek. They ask for information about Argentina's worldwide assets generally, so that NML can identify where Argentina may be holding property that is subject to execution. To be sure, that request is bound to turn up information about property that Argentina regards as immune. But NML may think the same property *not* immune. In which case, Argentina's self-serving legal assertion will not automatically prevail; the District Court will have to settle the matter." Republic of Argentina v. NML Capital, Ltd., 134 S. Ct. 2250, 2257–58 (2014).

[34] *See id.*

[35] *See, e.g.*, Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria, 308 F.R.D. 27, 34 (D.D.C. 2015). That court noted that the discovery sought, in this case a deposition notice, "does not implicate any immunity from execution that Nigeria may have under FSIA. It does not attach Nigeria's property, nor does it have any legal effect whatsoever on Nigeria's property; it simply mandates Nigeria's compliance with the subpoena. Accordingly, whatever execution immunity Nigeria may possess under the FSIA, it currently possess no bar to the discovery [the judgment creditor] seeks. As the Second Circuit held in *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 209 (2nd Cir.2012), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, —— U.S. ——, 134 S.Ct. 2250, 189 L.Ed.2d 234 (2014), whether a foreign sovereign's property identified during post-judgment discovery ultimately satisfies FSIA's attachment requirements 'must be determined separately under the FSIA, but this determination does not affect discovery. This is because a court's power to order discovery to enforce its judgment does not derive from its ultimate ability to attach the property in question but from its power to conduct supplementary proceedings, involving persons indisputably within its jurisdiction, to enforce valid judgments.' *EM Ltd.*, 695 F.3d at 208." Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria, 308 F.R.D. 27, 34 (D.D.C. 2015).

Rules of Civil Procedure. And those rules dictate that Bank of Utah respond to Commissions' subpoena.

Counsel for Bank of Utah suggests that several circuits have passed on this subject;[36] the Tenth Circuit has not. While historically interesting, the Supreme Court seems to have spoken on the subject of discovery and recognizes that the problem is one of sequence. It recognizes that information is one thing, execution is quite another. In the thinking process, one is ordinarily concerned with adequate information. There is virtue in the fact that a third party Bank of Utah should provide information to enable either a party or the court an informational footing for decision.

## **CONCLUSION**

For the foregoing reasons, Commissions' Motion to Compel Compliance with Subpoena Duces Tecum is GRANTED. Counsel for Plaintiff has indicated that furnishing the information in digital form would be satisfactory; Bank of Utah should do so within 10 days from the date of this order.

DATED this 20th day of July, 2016.

Bruce S. Jenkins
United States District Judge

---

[36] In re Ohntrup, 628 Fed. Appx. 809 (3d Cir. 2015); Rubin v. Islamic Republic of Iran, 637 F.3d 783 (7th Cir. 2011); Peterson v. Islamic Republic of Iran, 627 F.3d 1117, 1128 (9th Cir. 2010); Connecticut Bank of Commerce v. Republic of the Congo, 309 F.3d 240 (5th Cir. 2007); EM Ltd. Ltd. v. Republic of Argentina, 473 F.3d 463 (2d Cir. 2007).